May I just let the class kids call for oral argument. People v. Demers. Council, whenever you're ready, may proceed. Thank you, Justices. May it please the Court. My name is Robert Bass. I represent John Demers. On April 5, 2011, when John Demers' wife, Catherine, when she was notified that John was taken into custody, little did she know that his constitutional rights to gain access to his attorney would be violated by common law police. That evening, the attorney at the time, the retained attorney, David Ferencamp, and the record shows, and I would ask the Justices, if they haven't already done so, please listen to the phone calls between Mr. Ferencamp and Cromwell Police as well. Could you keep your voice up just a little bit, please? Oh, certainly. Thank you. We're all getting kind of old and hard of hearing. We need to speak louder. If I need to scream at you, I will.   They denied him access to his client, undercutting Mr. Demers' Fifth Amendment rights, undercutting the issue as to whether he may be knowing a voluntary as well as an intelligent waiver of those rights. Let me ask this question about that. I heard you say that the telephone recordings of the telephone calls themselves are in evidence? Yes, Justice. Okay. And my understanding from the State's brief was that there was conflicting evidence about whether or not Mr. Ferencamp was told, don't come down, it won't do any good, we won't interrupt the interview, or whatever. Is that right? Or, I mean, does the telephone calls themselves in evidence show that the police said, don't bother coming down? What happened that evening, Your Honor? The long and short of it is we believe the record is pretty consistent that Mr. Ferencamp was denied access, and it was clear. What happened was he called, and the supervising officer… Who did you say he called? The attorney of record, Mr. Ferencamp. He called… He called who? He called police, excuse me, Collinsville Police Department to advise that he was Mr. Demers' attorney and that he wished to either speak to him or have it made known that he is standing by and available to him. At that time, the supervising officer, Lieutenant Zaber, he was leaving for that evening, so Mr. Ferencamp was placed on hold, dispatched, then telephoned Detective Zaber, and Detective Zaber had taken down Mr. Ferencamp's identifying information, his cell phone information, and returned a phone call to Mr. Ferencamp. Now, the phone call from Lieutenant Zaber's cell phone to Mr. Ferencamp, that is not in recording and, therefore, that is not in record. What is in record was upon the request by Lieutenant Zaber, Attorney Ferencamp called Collinsville Police and audio recorded the conversation between himself and Lieutenant Zaber. And what it revealed was Mr. Demers was taken into custody. The interview had already been started with another lieutenant, a detective crew, and they were not… And a Miranda had been given or had not? At this time, it was at the very beginning of the interview at the time that Mr. Ferencamp had a conversation with Lieutenant Zaber. It was the very beginning, so it was around that time, and the record does date stamp as well as time stamp the time of the exchange between Detective Crew and Mr. Demers. So, simultaneously, contemporaneously, the phone call with Lieutenant Zaber and Attorney Ferencamp was transpiring approximately around the same time, okay? It was relatively simultaneously taking place at the same time. In no uncertain terms, Lieutenant Zaber said, the interview has started, we're not going to stop it, and the only way we will stop it is if John Demers asks to speak to an attorney. The recording shows when Attorney Ferencamp calls Collinsville Police to audio record his conversation with Lieutenant Zaber. He says that the only way the interview was going to stop is if John Demers had requested counsel, and even if Attorney Ferencamp went to the station, once the interview started, they weren't going to stop it. So that part is on a recording? Yes, Justice. Okay. And again, this recording is David Ferencamp calling back Collinsville and audio recording. Ferencamp recorded it? Is that what you're saying? No, it's Collinsville Police. Okay. Yes, Justice. Collinsville Police, because when he returned a phone call, it was at Lieutenant Zaber's advice. Attorney Ferencamp, in the record, he said that's a good idea because it would help document what transpired because Zaber, he was on his cell phone, and so there was no recording device. So he called dispatch, which was a recorded line. Okay. And also during that period of time, Mr. Ferencamp, he was placed on hold. Okay, so this isn't the conversation between Ferencamp and Zaber. This is Ferencamp calling into dispatch and just making a statement. He was making a statement after his phone call. But then later, Zaber, at the hearing, gets on the stand and says, I never told him he'd be denied access if he came down. We believe the record shows otherwise. Well, I know, but was there a conflict in the testimony about that conversation? My understanding is no, Your Honor. Okay. My understanding of the testimony was once the interview started, it was only one person who had that right, and that was John Demers. Okay. And so what I believe where the court had error, where the trial court had error was in finding that since Mr. Ferencamp was not physically present and was not available, the implications of the Illinois protections under the Fifth Amendment as well as Mr. Demers' protections under the Due Process Clause of the Illinois Constitution, they are not implicated. What the trial court failed to examine was the intelligent part of the waiver of Miranda. Had Collinsville notified John Demers that his retained attorney was on the phone, I don't think we'd be here. I think there would be a different outcome. Are you suggesting that Collinsville police did anything deceitful to Mr. Demers to dissuade him of talking to an attorney? Justice, that's a very good question. The answer to that question, Your Honor, is they didn't do anything deceitful. They did something more egregious. They just outright denied access to counsel. Now, the case is cited both in my brief as well as the State's brief, People v. McCauley. There's evidence to show that there was deceitfulness, that there were half-truths, that the counsel representing the defendant in that case, the McCauley case and the Chapman case, was led to believe that the arrestee, their client defendant, was somewhere else. In this case, from the outset, the Collinsville police, they had a clear decision of what they wanted to do. And in no uncertain terms, they were going to deny access unless John said, I want my lawyer. They're going to deny access. Now, under the rule of McCauley and Chapman, they both agree that giving Miranda does discuss the generalized right of either having appointed or retained counsel. However, in order for there to be an intelligent and an intelligent waiver, there must also be notice, information disseminated by law enforcement to the arrestee that their attorney wants to make contact with them, or, at the very least, that their attorney is calling and notifying that they are present. How can the police over the telephone know that the person calling is an attorney or who that person is? Thank you, Justice. In this case, there was no question as to his identity because on the recording, on the dispatch recording to a dispatcher being Attorney Farringham identifies who he is. He identifies that he is Mr. DeVere's lawyer and provides his contact information, including his telephone number. And the record also reflects that Mr. Farringham, he's been a member of the bar for 35 years, and I'm sure he would have much more. Go ahead. Finish your sentence. Thank you, Justice. It would have much more to lose than gain, particularly making false statements or obstructing an investigation, using the means of interstate commerce to impersonate an officer of the court. So in that case, once that information was provided, there was no additional questions asked to his identity as well as the fact that he was John DeVere's attorney. Thank you, Justice. Thank you. Counsel. You need an extra minute or two. We'll give you that, too. Good afternoon, Your Honors. I'm Victoria Joseph for the people of the state of Illinois. May I please report? Counsel. I'd like to briefly touch on each of the defendant's arguments in his brief. His first argument is to the sufficiency of the evidence. Most of his brief focuses on attacks to the credibility of the victim, and as this court knows, it is not to retry and reweigh the credibility determined by the trier of fact. The victim's testimony was not so improbable, so unreasonable, and though there were minor inconsistencies, so inconsistent as to reweigh his credibility. He gave detailed testimony as to the events that occurred with the defendant, and the defendant's own admission is sufficient to support the conviction. Turning to the defendant's admission, the trial judge did not abuse his discretion in admitting the statements in light of the Supreme Court's holding in both McCauley and Chapman. Chapman held that there is no violation of the defendant's Fifth Amendment or due process rights when the defendant makes an incriminating statement before the attorney is physically present at the police station. Let me ask you a question, the same question I was asking your opposing counsel. The defendant's position is, as I understand it, that Ferencamp called and said, I'll come down to the station, or I'm coming to the station, or whatever. And Ferencamp testified, as I understand it, that somebody told him, don't bother coming because we're not going to let you in. That is what he testified to. That's what he testified to. Now, was there conflicting testimony to that? I believe there was conflicting testimony. I'm thinking in the brief, in the state's brief, Zuber. I think Zuber did testify that he did not make the latter statement. He didn't make that statement. He did not make that statement. He says Ferencamp never said he was coming down. He never told him not to come down. He never, that is correct. And I believe in the recordings of the actual conversations between Ferencamp and the police station, that was not among the recordings. I believe it was only in Ferencamp's recollection of what was stated. Now, did the trial court make any finding about that issue, whether or not Ferencamp was told not to come? And any oral findings or anything? Because we review the trial court's factual findings in a motion to suppress on a manifest weight of the evidence standard. But then we determine de novo based upon those facts that are not against the manifest weight whether or not evidence should be suppressed. Your Honor, I don't remember because I know it was divided over several. Well, that's okay. There were several hearings. We'll look at the record. But under Chapman, the judge did rely on Chapman. And here there was a telephone call only. And the court found in Chapman that a telephone call alone is insufficient. And even McCauley talks about you need, the language turns on physical presence and immediate availability. Well, let me ask this. I mean, if in fact the facts were that he called down and said, I'm on my way to the station. And they said, don't come. We're not going to let you in. We're going to stop you at the door or whatever. Couldn't we determine that to be tantamount to him being present and being denied? No, because we don't know. We cannot speculate on what the officers would have done once the counsel was immediately available and present. If they were indeed aware. So if they can talk the attorney out of it. And I don't believe the evidence is determinative in showing that they did. Okay. But unfortunately, those are not the facts that are immediately present before the judge, the trial judge. So under the holdings of both McCauley and Chapman, the trial judge did not abuse his discretion. He did hear all of the evidence. He did hear what was played. And he made the determination that this fell within the confines of Chapman. The trial judge also did not abuse his discretion in admitting the other crimes evidence. Here the evidence was highly probative. There was almost no remoteness in time as to the incidents occurred either just before the charged conduct and or simultaneously to the charged conduct. They were also nearly factually identical. The relationship, the defendant's relationship with the victims. He was all their uncle. The location of abuse in his home. The conduct itself. And that the abuse began with each child at nine years old. Excuse me. The timing and similarities make the evidence highly probative. And though there is prejudice, as there is always prejudice in evidence against the defendant, it did not substantially outweigh the high probative value here. Further, the judge limited the victim's testimony to the frequency of the abuse rather than the quantity. There was only one single witness to testify as to incidents that occurred outside of the charged conduct, the incident victim. The camp out testimony was very generalized. And the only way in which the additional two victims, the complainants came in was through the defendant's own admission. They did not testify themselves. As to the closing argument, the defendant forfeited his contention in failing to object to all but one of the comments. And failing to raise it in his post-trial motion. The prosecutor's characterization of the defendant was an isolated remark that was not of sufficient magnitude to require reversal. In addition to, it was neither objected to nor raised below. The misstatement of the victim's date of birth was corrected after it was objected to. So it, though it was misstated, the correct date of birth was given. As far as the comments about Catherine, there were challenges to her credibility as a witness based on her testimony and reasonable inferences therefrom. And the prosecutor may fairly comment on any properly admitted evidence which the people maintain the other crimes evidence was. Where there were no individual errors, the defendant cannot show cumulative error. And even if there was a single error, it does not amount to such pervasive pattern of error that requires reversal. Finally, the trial judge did not abuse his discretion in sentencing the defendant. He received two consecutive six-year sentences on two of the counts. And the remaining counts were six-year sentences to run concurrently. This was not a case where the judge improperly considered a factor he should not have or did not consider all of the evidence presented before him. The defendant is essentially asking this court to reweigh his rehabilitative potential. The trial judge was presented with it, and it was addressed again in the motion to reconsider sentence. But the judge based his sentencing on the prolonged nature of the offense and the need to protect others. And the degree of harm here was great, where you had a six-year duration of the conduct, the nature of the conduct itself, the fact that the defendant was in a position of trust over the victim. And he had uncharged conduct with two other minors. This court does not need to reweigh the properly considered factors in sentencing. Are there any other questions? I don't believe so. Thank you, counsel. I move that the state of Illinois ask this court to affirm the conviction and sentence. Counsel? Justice Stewart, you had asked myself the question as well as opposing counsel. So to answer your question, and I hope this brings clarity to the question, is was there anything, if I understand the question correctly, was there anything communicated to Attorney Farrenkamp not to come to the police station? Or that it wouldn't do any good if he did or, you know, that sort of thing. Precisely. And to answer that question on my brief, page 9, which is taking from the transcript of the suppression hearing, I turn the justice's attention to the first paragraph of page 9 that Demers' attorney explained the reason he did not go to Collinsville Police because it would have been a waste of time. That Collinsville Police Department would not interrupt the interview at Demers' attorney's request. They would only allow Demers to have counsel if Demers requested it. And then moving down, the last sentence, this is when Lieutenant Zaber testifies. The very last sentence. An attorney does not have the right to invoke the right to their clients either in a phone conversation as well as in person. And then he goes on to testify that he gave the dispatcher John Demers' attorney's name, and Zaber instructed the dispatcher do not interrupt the interview. It is clear that the interview, once it started, it wasn't going to be stopped by anybody unless it was John Demers. We believe that the record is clear that it wasn't an issue of leading counsel on or putting him on a chase. They simply obstructed and interfered with contact between Mr. Demers and his retaining attorney. Next, I'd like to… Let me ask you about the Chapman case. Can you distinguish the Chapman case in any way? Certainly. The Chapman case, if I could have one moment, Your Honor. The Chapman case, in that case, there was no issue of… There was a question of identity, and that was one of the reasons in the Supreme Court holding the importance of the attorney being at the station. Also, there was, from the record, from the Supreme Court opinion, there was no mentioning that there was any instructions by way of telephone that any interrogation or interview of the arrestee should take place. But in this case, we believe, upon a closer examination, we believe this can be the case where it would clarify the opinion that in this case, attorney Farringham said, stop talking. I'm here. I am present. And here, what makes the facts more compelling for you justices is he was prevented from the outset. And so whether he was there in person or whether it was simply by a telephone call, he wasn't sending a third-year law student. It was him. He was prevented from the outset, and that's one of the reasons why he wanted this conversation audio documented, because even if he did show up, the evidential – the preservation of any evidentiary value of what was being elicited in an interview would have been lost. Last – in terms of other crimes evidence, we believe that Mr. Demers' due process rights were violated. Clearly, there were a volume. Instead, the trial court committed error by saying instead of using volume, you can use frequency. The translation of that was it confuses the jury because what they did here and what they're able to make the reasonable inference of is over 100 incidents of uncharged acts of abuse by John Demers, many of which occurring outside of the county, the jurisdiction of St. Clair County. That was used in the minds of the jurors. What they heard was anywhere as little as only three specific acts for the 12-count complaint, and the way that the complaint was framed was one act of aggravated criminal sexual abuse over a six-month period. There were three specific instances of sexual misconduct over 12 counts. The rest was over 100 separate, broad, generalized accusations without more. We believe that the Cardamom case is instructive on this case, and we understand that there are limits. One of the limits of the Cardamom case says is other individuals, other alleged victims can't – there has to be a limit to other victims coming in to testify. But in this case, it goes much more than that because there is such a lack of specificity, which doesn't comport with the purpose of 115-7.3. The statement was allowed to show a broad scale of nearly 100 separate acts, a beginning date, an end date, and the only testimony that was heard by the trier of fact was allegations in support of three counts and not 12. Clearly, the judges – excuse me, the jury was confused, and they determined two things. He did something wrong. He's going to pay. Based upon this volume of evidence, which the word was frequency evidence, he was found guilty of all 12 counts. Thank you, Counsel. Thank you for your time, Justice. We appreciate the briefs and arguments of all counsel. If the case under advisement, there are no further oral arguments documented before the courts, we're adjourned.